Attorney for the parties, please approach the podium after you settle in at the desk. And starting with the Appellant's attorney person, tell us who you are and who you represent. My name is Aaron Nadeff and I represent Brian Berkholz. M-A-D-U-F-L-I-K-E-F-L-I-K-E-F-L-I-K-E. I'm Suzanne Quartu. I represent the Defendant Appellees, Corptax, LLC, M-L-L Information Services, Paul Madison, and Dave Shea. Each side is 15 minutes. You can see from the last two cases that Mr. Quinn is a terrible presiding judge. He's run a rough shot over me. I disagree. So we'd really appreciate it if you get to your strongest points first. We've read the briefs and we have the pertinent portions of the record. So any time you're ready, Mr. Madoff. Madoff, actually. I feel sorry, sir. Tough times. I'm cautious about that because my Uncle Bernie who was in the markets is very sensitive to how he pronounces his name. My Uncle Bernie who was in the markets. But you do have a real Uncle Bernie. Yes. Madoff. Madoff. Madoff. U-F-F. There he is. I see that. I looked at the briefs. No relation. I say Pat Quinn, not the Governor, all the time. Well, thank you, Your Honors. May it please the Court. Brian Berkholz was employed with corp tax pursuant to a contract that provided a salary and a bonus that would be earned should the company meet certain sales goals and that he be employed not only after the end of the year but three months later, March of 2010. The contract covered or the bonus period covered calendar year 2009. It was paid out in March of 2010. He was, in fact, employed in March of 2010. The bonus was paid to other executives. He was not paid the bonus. And then he was terminated in April of 2010. The trial court dismissed the case, the issue before you. What would your client have to have done to have made him eligible for that bonus other than just be present and employed when the bonus was paid? Well, in terms of his work, he needs to be working for the company. He is making efforts and he is putting forth efforts which help the company to achieve its targets. But the real key in this case is does the company meet the targets? And if the company meets the targets, that's the effective performance because that's the contingency that is placed on this bonus. So no matter what the employee does, as long as the company makes whatever they think is important, the bonus will be paid? Effectively, yes, because the contract doesn't set forth specifically something that he has to do in that sense. It's an employment contract. But he's working. I mean, if they fired him, he wouldn't be working there. He's got to show up for work. He's got to be working. And then presumably his work is adding to the company meeting the incentive bonuses. Otherwise, the company wouldn't have offered him a bonus for doing that. Your opponents make an argument about professional conduct on the part of your client which made him ineligible for the bonus. What's your response to that? It doesn't. There are two pieces. The first piece of that is that if you look at the contract, the contract has a section for the bonus and a section which is separate. And the bonus is earned under annual incentive. If you take a look at the contract, I don't know if you have it before you, but there's a segment at the bottom of page one that's the annual incentive. And this says how the bonus will be earned and no bonus will be paid if the results are 20 percent lower, et cetera. The portion that relates to the code of ethics is a different section entirely. I concede that it is part of his obligations to maintain his employment. But it is not something that goes to the annual incentive any more than it's something that goes to the salary. He shows up for work. He does his performance. He's paid his salary. He's paid his bonus. If they wanted to fire him for having violated, and we don't concede that he has. There's a lot of confusion on that, and I'd certainly like some discovery on that point. But if they wanted to fire him for it, they could have terminated his employment, and we may be looking at a different kind of case. But that's not what they did. They kept him employed through the end of the year. They kept him employed to March. They kept him employed until April. Now, the second part of that is he certainly didn't violate the conduct. He has given his affidavit that what he did was consistent with general accounting principles. In addition, you have the statement from KPMG says it's their opinion. I can't tell you what that opinion is based upon because this was dismissed at a 2-6-15. There's been no discovery. So I don't know what KPMG is referring to. I would like to certainly see the documents that they're relying upon. I'd like to know how they came to their opinion. But Brian Burkholtz is a CPA himself. He is as much an expert as anybody else. And he has stated that this was done entirely according to the practices. Moreover, the letters provided by Corp Tax's people. Was there an argument that you made that argument in the trial court that the discipline, you know, this is a different argument as opposed to saying that they didn't pay him the bonus when he was supposed to. The argument that you're making is that the discipline which removed the bonus was excessive or inappropriate or in violation of the contract or something of that nature. No, not at all. What are you saying? Well, first of all, the trial court never got to the question of bonus. It dismissed it because it said this is not an earned bonus under the IWPCA. So that isn't even in that sense before us. But what is going on here, and maybe I misunderstood you. It sounds like you're making a parallel argument that even if everything else is as you say, the company cannot remove the bonus on the basis of violation of some code of conduct because that's a disciplinary measure that was inappropriate in response to whatever it is that your client allegedly did. I think that's an accurate statement, Your Honor, that you're correct in that that is the case. I don't know that we ever got to that point. You're making that argument now. Are you trying to make that argument before us? And maybe that's my question. I don't think it's – well, I can put it out there. I don't think it's necessary because I don't think we ever get to it. The question of whether or not he violated anything is something that there's certainly a dispute on. He gave his affidavit that says that he hasn't violated anything. And I have to concede that without having done the discovery and understanding the specifics that KPMG is going for and Mr. Madison, who said that there's no intent, he said in his letter that there's no violation. I don't understand where all that's coming from, and I would need the discovery on that point. But even so, the contract itself, you're right. The contract says you pay a salary and benefits for working. You pay an incentive. Here are the conditions. We meet the target. Next page. We've got a value creation plan, and that gets paid for certain areas. Then you have an information confidentiality agreement, and you agree to do this. You can be terminated. That's the termination section. And then it goes into what's termination for cause. Counselor, aren't there cases that suggest that these bonuses can be discretionary? Is there any discretion at all? That's where I went to trying to demonstrate this through use of the Illinois minimum wage law. This is not you have a if you want to start phrasing it as a guaranteed versus a non-guaranteed bonus, which is really where McLaughlin is doing the analysis under section B of the regulation. I think it's 300, 500B, because it hasn't been earned. Now we come to that question, and you're right. And it's discretionary if it's specifically listed as discretionary, like in O'Leary, for example, where they say this is a discretionary bonus. This is a bonus that you will earn. They've made a promise, and the key to this is that when you look at the contract, I know that the defendant would like to say it can never be an earned bonus because on the contract there are conditions, but the reality is what's in the contract is a bonus that can be earned. If the bonus can be earned, it's not discretionary. A discretionary bonus is a bonus that can't be earned. It's a bonus that, you know, here's a Christmas bonus. We want to pay it to you as we get to the end of the year. You've got no expectation of it. But the case before us is whether or not the protections of the IWPCA applies to your client. So you're not proceeding just under a contract theory. This is coming from the Zeotis versus the Written Law from the Connecticut case cited in 2010, pointing out that when you're trying to go under the statute, that's where we look at whether or not what is meant by an earned bonus. Nobody, I don't believe, is saying that you don't have a contractual right somewhere. The question is can you rely upon the statute. That's why I'm reading this. And when you do that, the question that becomes, as you say at page four of your brief, that there's no question, but he earned this bonus because of what the company did, not because of what he did, that he would get, as you lay out at page four, after 80 percent, if the company achieves 80 percent of its target goals, then he starts getting a bonus and it goes up and it goes up. That is based on what the company did, though, not based on what he did. And certainly the company did achieve, actually far exceeded their goals the first couple of times and then doubled his bonus or gave him more. And here there's no question, I don't believe, factually, that the company achieved what they wanted to achieve, meaning over 80 percent. However, that is not directly related to your client's participation, is it? Yes, it is, because what is the company? The company is a group of people who do their part. Whenever we get together as a team, I do this in my law firm when the attorneys get together and we work on a case and we work as a team and everybody adds their thing. We hit our goals and we do what we do as a team. If the employees just say I'm not going to perform, then the company isn't going to hit its goals.  It's that they want the company to hit those goals. They want the people to get up and do their jobs. Admittedly, it doesn't go forward and state in specific pieces straight through the contract every little thing that happens every day of the week. But any time that the company is going to be achieving goals, it's achieving goals because its employees are doing work. And anybody who's getting an incentive bonus, the whole point of an incentive bonus is to incentivize somebody to do the work. So he is contributing, presumably, to the company achieving those goals. The regulation puts it in terms of the employee meeting his, performing on the agreement. But the only performance that is- Isn't bonus by its very nature discretionary? If it was a part of his compensation, why is it identified as a bonus and then tied to other things? And according to the contract in this case, it wasn't tied to his individual performance. It was tied to the company performance. Is that right? Well, you've asked two separate questions. With certain behavioral or performance measures on his part, ethical conduct and so on. Well, that's not tied to the bonus at all. Now you've asked three questions, so I need to- Okay, we'll answer them in any order that we can. Okay. I just want to make sure I get a chance to respond to everything you're asking. All right. The first thing is that what you've identified is sort of an anomaly in the way the regulation is written. The regulation says that the employee earns a bonus by performing his responsibilities. And in fact, if I can just have a moment, I will lay my fingers exactly on the regulation. It reads, a claim for an earned bonus arises when an employee performs the requirements for a bonus set forth in the contract or an agreement between the parties. In this case, the only thing that is directly required of him is to be employed. I concede that. But also there is the fact that the company has to meet the targets. What we're talking about here in Section A is that a claim for an earned bonus arises when the conditions for that bonus are met. You can't read it any other way. It would make no sense. So that's what we've got here in the conditions are met. Now the question is, does meeting those conditions include some sort of ethical conduct? And I've already gone forward that that's met and that maybe we need some discovery on it. But putting that aside, no, it does not. The ethical conduct is something that he's required to do as an employee. And if they want to terminate him for it, they can do it if they think that he's doing something wrong. And if they had terminated him, we would be looking at McLaughlin. We would be looking at, are we dealing with a pro rata situation? But that's not what happened. They didn't determine that you were an ethical violation, so we're firing you. They kept him through the end of 2009. They kept him through March of 2010. They kept him through April of 2010. But I don't dispute that they would have the right if he had some violation under the cause section to terminate his employment. But they can't now say we're not going to pay the bonus any more than they can say, well, we're going to just retroactively deny your salary. For 2009, that's what you're arguing about. You're not arguing about bonuses for subsequent time periods. So I would assume or I think it can be inferred that the ethical conduct issue that they were alleging may have occurred, would have occurred back in 2009, which is the bonus that's at issue. I can't answer all of that because we haven't had the discovery, Your Honor, and so I haven't been able to explore that with them. But assuming that in fact. Well, yes, you can. You're alleging that he didn't get his bonus for 2009. Right. That's all I'm asking. I'm sorry. I thought you were talking about the misconduct. No. We're alleging that he did not get the 2009 bonus. That's correct. And they still employed him at the end of 2009. They still employed him at March of 2010 when they paid it out. But you're not contesting anything about 2010, are you? I mean, the bonus and issue that's the subject of this lawsuit is 2009. No. This is not a pro rata. You're right. We're not asking for a pro rata. That's why this is not McLaughlin or any of the cases that McLaughlin relies upon. Tell us, let's talk about McLaughlin. Does that holding confine itself to an employee that's been terminated? Yes, it does. Does it specifically say that in the case? Yes. Applying only to terminated employees? Yes. If you'll give me one moment to grab it in McLaughlin, if you take a look at the top of page 544 in McLaughlin, where it is stating its analysis of the prior cases, it says, in sum, in determining whether an employee is entitled to a pro rata share of a bonus. That's pro rata. That's different than what we're talking about, but go ahead. Well, no, that's my point. McLaughlin is going to the proportionate where the employee was terminated. A pro rata is where he's terminated. That's not this case. This man was not terminated in 2009. As you pointed out, we're talking about the 2009 bonus. If we were talking about a 2010 bonus, that may be something different. But in terms of the 2009 bonus, we're not asking for a pro rata. We're asking for the bonus because it was earned. McLaughlin is talking about a pro rata because Mr. McLaughlin was terminated in October, and the bonus wouldn't have been completely earned until the end of January. So McLaughlin is talking about pro rata, and it says there at 544, and then at the end of the page it says, as the bonus referred to in the agreement was not guaranteed to be paid, the plaintiff was not entitled to a pro rata share of that bonus. McLaughlin is talking about the pro rata bonus. It is not talking about a case where he has performed and he's there. And there's nothing else in McLaughlin that you argue that applies to this case? It should be distinguished because it talks about pro rata and not what we have here? Yeah. I mean, and McLaughlin sets it out. And, in fact, the cases that McLaughlin cites are all pro rata cases. This case is, in fact, McLaughlin, even if you take a look at that same page 544 where it lays out the administrative regulations, it's all talking about B. It's a former employee. That's where the unequivocal language comes from, where it's earned by length of service. And that's where McLaughlin is reaching for. It's not reaching for A, which is where this case is, because Mr. Burkholz was employed throughout the period of time and the company met its targets. So the unequivocal is based on whether or not they were terminated? The unequivocal is how we now analyze a bonus if the employee is seeking a pro rata share because it's a length of service bonus. If it's a length of service bonus, it's like a vacation, right? So if I say you're going to earn your vacation for the length of time you're here, that's unequivocal. There's no condition such as we have to meet targets. So when you're looking for a pro rata share and you haven't, because you haven't completed the time period, where McLaughlin, they didn't get to the end of the year, they didn't get to the end of January, they didn't know what the targets would have been met, then it's a question of now is it a length of service bonus? That's what they're doing. Here, we're not looking for a length of service bonus. This is an earned bonus because the conditions for the bonus were met. Brian Berkholz was there at the end of 2009. He was there in March of 2010, and the targets, as Justice Quinn said, were unquestionably met and exceeded. All of the conditions for that bonus were met. So if you try to apply McLaughlin to this case, what you now say is, well, all right, we're going to give you a bonus. You can earn the bonus by, you get the bonus if you're here and if we meet these targets. Work hard. Help us meet those targets. Thank you for helping us to meet those targets. You've worked. Oh, by the way, since it was not guaranteed, since it was conditioned on making targets, it's not an earned bonus under the IWPCA, and therefore, we don't have to pay it. That's my second grade niece saying, trick just so you wouldn't want to be you. That's not how this is supposed to work. Well, you could still sue under the contract, could you not? I mean, had it been timely filed? You can sue. We don't really see it. I've seen on 15-year things, I've seen two IWPCA cases. I've seen lots and lots of employment cases where they're suing over salaries, lots of those. They're not filed under IWPCA. No. The IWPCA is a breach of contract action. The IWPCA itself says it's based upon a contract. It's simply another theory that you can go after it with. The IWPCA has certain advantages. It has attorney's fees, which have been added now. We amended the law last year. But prior to that, you had to serve a notice under the Attorney's Fees and Wage Claims Act, which, in fact, was done in this case. Could we have filed a breach of contract claim as well? Certainly. There's always cases where you can have more than one law that applies. But clearly, the IWPCA applies in this context. Thank you. I'm sorry. There was one more point that Justice Cunningham had brought up, which was, I think I covered it. It had to do with the fact that this was not seeking a proportionate share. If you'll have time to reply as well. Thank you, Your Honor. Thank you. Is that the Ms. Courthouse? Court two. Good morning. May it please the Court. I'm Suzanne Courthouse. As I said, I represent the defendant appellees, Corp Tax, LLC, MLM Information Services, Paul Madison, and Dave Shea. This case is about whether the agreement between the parties creates an unequivocal promise to pay plaintiff a bonus. The annual incentive described in the agreement is conditional, and therefore, plaintiff is not entitled to receive it. The annual incentive at issue is not an earned bonus. What is it conditioned on? It's conditioned on several things. It's conditioned on the company meeting the adjusted EBITA targets. It's conditioned on the plaintiff still being employed. And it's also conditioned on the other requirements in the offer letter. And what's that? Those include the requirements of abiding by professional ethical and CTX requirements, Corp Tax requirements for complying with regulations and policies and generally accepted accounting principles, et cetera. So, you know, the first three, the first of the three conditions, you're agreeing that he met those. He was employed and what was the second one? That the company met the EBITA. The company met their target, whatever the goals were. So not paying him his bonus was based on some violation of the third set of requirements. Is that your position? Yes, that is our position. However, even if that was not a requirement under the contract, the annual incentive was not an unequivocal promise and therefore could not be an earned bonus. Because it was conditional at the time it was offered, it was not an earned bonus. So under both sets of circumstances, he was not entitled to this bonus. What cases do you have to support that these other requirements should be considered in whether or not he should get this bonus? Are there cases in Illinois? There are not cases that address other requirements within the offer letter, but the statute is clear that the only bonus that can be that is at issue is, or excuse me, the regulation is clear, is that the only bonus that can be an earned bonus is the bonus set forth in a contract or an agreement between the parties. The agreement between the parties, which actually is not an employment contract, it was an agreement though and is an agreement for purposes of the Wage Act, that agreement includes the requirement that the plaintiff abide by the professional and ethical standards. He was the CFO of this company. He was involved in entering journal entries that created material misstatements in the company's financial statements. The court did not rely on that, right? The court relied on case law saying it was conditional. Absolutely. Very broadly, meaning conceding that the company met its goals, conceding the defendant was employed, and even then, without reaching, the trial court did not reach whether or not he was to be terminated. So the trial court said under that it doesn't come under the IWPCA. Right. And you're asking us to write that for every case out there to give a definition of earned bonuses that would deprive people under the first two. Let's say there were only two requirements in this case, that the company meet a target, which it meets, and that the defendant be employed on the last day of the quarter or the year, and conceding that was true. The companies can still stiff him because it is conditioned upon something which at the time of the contract was not known, meaning would the company meet its target. Yes. It's conditional. The prevailing case law, McLaughlin and the O'Leary case, both say that in order for a contract to pay a bonus, depending on whether the employer's annual sales increased, does not entitle the employee to a bonus. The bonus is not guaranteed. And that's what the circuit court relied on. Certainly in McLaughlin, the guy wasn't employed on the last day. He was fired. So he couldn't meet that. So the question, I mean, did he deserve money from day one to the last day of employment in the decision by Shostak, well-written opinion, said no. So we don't have pro rata here, though. We concede about a full calendar year. He met the first two requirements. Trial court didn't discuss the third requirement at all. So based on the existence, in spite of the existence of meeting the first two requirements, IWPCA does not apply. Right. Well, the McLaughlin case does not depend on the fact that the situation was pro rata. The McLaughlin case actually, plaintiff's counsel is mistaken in saying that it relied on Section B of the regulation, Illinois Administrative Code, Section 300.500. The case actually states that the unequivocal language is from Section A, which is the section that applies here. Right. It says Section 300.500A indicates that the right to a bonus must be unequivocal as the employee does not have a right to it until he or she has performed the requirements set forth in the contract. So the unequivocal language is interpreted to come from Section A, which is what we're looking at. And the McLaughlin court, while that decision was based on a pro rata situation, it doesn't depend on it being pro rata. Counsel, was Mr. Berkowitz told at the time of the 2009 issue when these accounting irregularities were discovered and he was disciplined, was he told at that time that as part of his discipline you're not getting your 2009 bonus? Whatever other discipline the company levied? This wasn't argued below and this isn't in the record, but I believe that Mr. Berkowitz was told that his position was being changed. And he was given a different title and different responsibilities in 2009, which would arguably invalidate the offer letter as applying, but because we're only at the motion to dismiss stage, we haven't reached that. Counsel, can I ask you, this case was ruled on by the trial judge on a 2619 motion, not a 2615. Yes, 2619. So it wasn't that there was a failure to state a claim, but there was some affirmative manner. And what affirmative manner did the court rely on in making this ruling? Well, actually, I believe that the court's ruling could have been under 2615 the way the court ruled. It wasn't, though. It was under 2615. It was under 2619, excuse me. The affirmative matters that were presented to the court that were not in the complaint, first, the complaint didn't attach the contract. Even under 2615, excuse me, it wasn't a contract, it was an agreement. Even under 2615, the court is entitled to look at the agreement at issue. And the court is entitled to rely on the agreement over the language of the agreement itself over whatever allegations the plaintiff has made in their complaint about what the agreement says. So the agreement at issue includes the requirement that the plaintiff abide by professional and ethical standards. The affirmative matters that we introduced in the motion to dismiss included the evidence of the professional and ethical misconduct of the plaintiff that caused the company to refuse to pay, to not pay the loan. The trial court didn't reach that at all. What? The trial court didn't reach that at all, right? The argument that the plaintiff made at all. Right. I believe that the trial court's ruling could have been under 2615. The fact that they chose to, that the judge chose to rule under 2619. And again, that's what you're basically asking us, right, to find that there is no cause of action under the IWPCA under these circumstances. So even though under the contract all the targets are met, that's okay, you still can't balance the IWPCA. The target, the EBITA target was met. The plaintiff was still employed. But it is our position that the plaintiff was not entitled to the bonus because he did not meet the professional and ethical requirements. But again, it was never reached in the trial court. So we can't possibly affirm based on your defense as to number three, because that was never addressed in the trial court. How on earth can we on the Court of Review say, oh, by the way, even though this wasn't argued down below or it was brought up in court. It was argued down below. But there's no evidence of it down below or they didn't have a chance to have discovery on the issue. We can't possibly do that. So I'm just telling you, that's not happening. We're not. We're not doing it. No. Okay, Your Honor. And we're not going to reach number three if it wasn't down below. That's not, no. So do you want us to say that under, as I say, that we're corporations, employers can tell employees sign this contract. I agree to pay you under these two things. You meet them. I can still stiff you. But if I do, you can't sue me under IWPCA. You can only sue me in a contract. Your Honor, this isn't a gotcha situation. This is an incentive bonus. This is something that is not guaranteed. Whether you have the courage of your convictions or you don't, you want us to write this a certain way. And the trial court wrote it in a very broad way, saying when the bonuses say, when the bonus is contingent upon a thing which is not directly related to the employee's performance, in this case target income for the firm, and that is met, the employer can still not pay out on the bonus, even though all the conditions are met, because it's an improper suit under IWPCA. That's what the trial court found. I agree. And do you want us to find that? I would be happy if you were to find that. But I also believe that you don't have to go that far to affirm the trial court's ruling. And what else can we base it on? You can base it on the fact that under this contract there were other requirements and we have provided evidence that those requirements were not met. I recognize that Your Honor has said that that's not what you're going to do. I'd be stunned. Just one other point, getting back to the distinction between the regulations, section 300.500A and section 300.500B. While the court decided McLaughlin based on section A, the Camillo case that plaintiff relies on is consistent with section B as opposed to section A. So while section A applies to our case and applied in McLaughlin, the section B applies to Camillo. Section B is only where the bonus at issue is a proportionate share, a pro rata bonus. The bonus is earned for length of service, which is not the case in this case or in McLaughlin. There is a provision in the contract or agreement conditioning payment on employment on a certain date, which it's not clear if that was the case in McLaughlin. And the employment relationship was terminated by mutual consent or through no fault of the employee, which is not the case here. All of those conditions were met in Camillo. The Camillo case sought a pro rata share of the bonus. It was a length of service bonus, which required employment on a specific date, and the plaintiff's employment was terminated. It's unclear if there was fault. So the Camillo case the plaintiff relied on is not applicable here because as plaintiff agrees, section B is not applicable to our case. Thank you. You have some time. You won't have time to reply. You can go back. Thank you. Mr. Madoff. Madoff. Madoff. Thank you for trying, Robert. I appreciate that. It's not that Madoff. I'm sorry. Go ahead. I will just address one point. We do not rely on Camillo. I agree with counsel that Camillo is a pro rata case. It goes to the length of bonus. What we rely on is subsection A, and in the Reed-McLaughlin counsel just pointed out, section 300-500A indicates that the right to a bonus must be unequivocal as the employee does not have a right to it until he or she is performed, which means that once he or she is performed, or the same coin is, the conditions are met, he does have a right to it. And that's why when we look at the contract, we see a bonus, not a, you might call it a discretionary versus a non-discretionary bonus. That's what O'Leary is. It says a discretionary bonus. But what it is is it's a bonus that can be earned. In the contract, it hasn't been earned. It's just written in the contract. It's the promise. Now, I do take issue with the, what I consider, honestly, hair splitting between an agreement and a contract. There was an offer. There was an acceptance. There was consideration. If we wanted something attached, the court can certainly turn to us and say, please, attach the agreement. We have no issue with that. But if you look at the contract, it says you will earn this bonus. And I think it says it something like five times. If we meet these things, you will earn it. In fact, I just grabbed the contract. The words are, I'll drop partway down, you will earn 5% of your bonus so that 100% of the financial target, you will receive 100% of the bonus. For every additional 1% of financial target over 100% that the company gets, you will earn 2%. That's how you earn the bonus. It's not a question of unequivocal in the contract. It is unequivocal in the contract in that you will get it if we hit the targets. You will earn it. But obviously, we don't know what's going to happen until the end of the year. A bonus is earned for the IWPCA when the employee has performed, when it's been earned, as described in the contract. That's all I have, Your Honors, unless there are questions. This case will be taken under advisement.